## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CARNELL HUNNICUTT, SR.,

     Plaintiff,

vs.                                                                No. 20-cv-206 MV-CG

DANIEL PETERS, *et al*,

     Defendants.

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Temporary Restraining Order ("TRO") (Doc. 10). Plaintiff is incarcerated, appears *pro se,* and is proceeding *in forma pauperis.* He alleges that prison officials are serving a limited selection of bland, packaged Kosher foods and that the supplemental hot foods are not prepared in accordance with Kashrut. Having reviewed the matter *sua sponte* under 28 U.S.C. § 1915(e), the Court declines to enter a TRO but will order Defendants to file an answer and conduct a further investigation.

### BACKGROUND

Plaintiff is incarcerated at the Southern New Mexico Correctional Facility ("SNMCF"). He practices Judaism and has been approved for a Kosher diet. The TRO Motion alleges that his meal options are only quasi-Kosher. *See* Doc. 10 at 1; Doc. 12 at 1. SNMCF purportedly provides a certified Kosher entrée, which is often prepackaged and "monotonous," along with other foods that are supposed to be Kosher but are in fact prepared by non-Jewish inmates using contaminated utensils. *See* Doc. 11 at 4; Doc. 12 at 1. The food staff has "no culinary arts training," and Plaintiff is often unable to obtain items that are supposed to be on the Kosher menu, such as bread, jelly, peanut butter, and margarine. *See* Doc. 10 at 1, 6. He contends that he receives repetitive cold

lunches while the general population receives two to three hot meals per day, and his diet does not provide 3,000 calories per day. *See* Doc. 3 at 3; Doc. 12 at 2. The memorandum supporting the TRO further states that Defendants refuse to provide meals in compliance with the Shabbat/Sabbath. *See* Doc. 12 at 2. It appears that prison staff may be serving food that needs to be reheated. *Id.*

Plaintiff contends that he tried to address the issues via the prison grievance system, but that his complaints were rejected. *See* Doc. 10 at 1. Plaintiff initially filed a Civil Rights Complaint under the First Amendment, 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and the New Mexico Religious Freedom Restoration Act ("NMRFRA"). *See* Doc. 3 at 1. On November 12, 2020, Plaintiff filed the instant Motion. *See* Doc. 10. He asks the Court to enter a TRO that requires prison officials to: (1) implement a "no-touch diet system" where staff and inmates do not touch Kosher food; (2) offer a better variety of pre-packaged Kosher certified meals; (3) comply with the meal requirements for Shabbat/Sabbath; and (4) ensure that he receives enough calories each day. *See* Doc. 10 at 4; Doc. 12 at 1.

## DISCUSSION

To obtain a TRO or other injunctive relief, the moving party must show "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest." *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (quotations omitted). These four prerequisites must each be satisfied independently. *Id.* Because preliminary injunctive relief is an extraordinary remedy, the right to relief must be clear. *See*

*Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005).

The Tenth Circuit applies a heightened standard for "[d]isfavored preliminary injunctions"—those that do not merely preserve the relative positions of the parties. *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 797 (10th Cir. 2019). A disfavored preliminary injunction is one that: (1) mandates action rather than prohibits it; (2) changes the status quo; or (3) grants all the relief that the movant could expect from succeeding at a full trial on the merits. *Id.* The requested TRO here falls into the first category. Plaintiff wants prison officials to implement a new food service program and provide additional or better Kosher foods. Plaintiff must therefore meet a heightened burden by making a strong showing that the factors weigh in his favor. *Id.* (citing *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016)).

## I. Likelihood of Success on the Merits

The "First and Fourteenth Amendments [entitle] … inmates to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted). The determination of what constitutes a "reasonable opportunity" is made "in reference to legitimate penological objectives." *Id.* To allege a free exercise claim, the plaintiff inmate "must adequately allege that the defendants 'substantially burdened [his] sincerely held religious beliefs.'" *Id.* (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)). The Tenth Circuit has held that "an inmate's right to free exercise of religion includes the right to a diet that conforms with their religious beliefs." *Id.* at 1070 (citing *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002)). "'[A] prisoner's religious dietary practice is substantially burdened when the prison forces him to choose between his religious practice and adequate nutrition.'" *Oliver v. Harner*, 2016 WL 1117084, at *10 (S.D. Ill. Mar. 22, 2016) (quoting *Nelson v. Miller*, 570 F.3d

868, 879 (7th Cir. 2009)).  However, "[a] prison is entitled to ensure that a given claim reflects a sincere religious belief, rather than a preference for the way a given diet tastes…." *Gallagher*, 587 F.3d at 1069.

The RLUIPA and RFRA contain similar provisions.  To state a claim under the RLUIPA, a plaintiff must plead that "he wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010).  The RFRA "prohibits a government agency from restricting a person's free exercise of religion unless the restriction is one of general applicability, does not directly discriminate against religion, is essential to furthering a compelling government interest, and its application is the least restrictive means of furthering that interest." *State ex rel. Peterson v. Aramark Corr. Servs. LLC*, 321 P.3d 128, 138 (N.M. App. 2014).  "Free exercise of religion" is defined as "an act or a refusal to act that is substantially motivated by religious belief." *Elane Photography, LLC v. Willock*, 309 P.3d 53, 76 (N.M. 2013).

Although Plaintiff has made a plausible showing of a religious violation, his right to relief is not clear and unequivocal. *See Dine Citizens Against Ruining Our Env't*, 839 F.3d at 1281.  The TRO Motion and accompanying affidavits reflect that Plaintiff is receiving certified Kosher entrees. *See* Doc. 11 at 4 (alleging "the only thing the Defendants provide that [is] certified Kosher are the entrees.  The rest of the meals are not prepared according to the laws of Kashrut").  The Complaint also alleges that prison officials serve a "monotonous" Kosher diet of peanut butter, cheese, beans, rice, tuna, and noodles, and that Summit Foods should be serving Kosher fish, and fresh produce and fruits, along with "USDA choice" beef, veal, lamb, and poultry. *See* Doc. 3 at

4

2-3, 5.  While Plaintiff alleges that he is not receiving enough calories or nutrition, given the limited Kosher food options that are handled by non-Jewish individuals, elsewhere he also alleges that he should receive "3,000 calories a day."  *See* Doc. 3 at 3; Doc. 12 at 3.  On this record, Plaintiff has not made a clear showing that he has to choose between adequate nutrition and eating non-Kosher foods.  The Court cannot conclude that Plaintiff is highly likely to succeed on the merits, as required to order a mandatory injunction.

## II.  Irreparable Harm

Plaintiff alleges that he will suffer irreparable harm without an injunction because he is not receiving enough calories.  The Court takes this allegation seriously, and based on that statement alone, will order Defendants to respond and conduct an investigation on the merits.  However, as to emergency relief, it is difficult to make a finding of irreparable harm for the reasons stated above. Plaintiff contends that he has lost weight, but the Complaint primarily focuses on the "monotonous" Kosher food options, the fact that Summit Foods does not have a culinary arts training program and serves materially worse Kosher foods than the last food services contractor, and the absence of hot, non-vegetarian Kosher food, as contemplated in the Summit Foods Contract.  *See* Doc. 11 at 1; Doc. 3.  It is difficult to tell whether Plaintiff has so few certified Kosher options that he is food-deprived, which is an emergency, or whether his Kosher options are cold, monotonous, and unappealing, which is not.  Plaintiff also alleges that the constitutional violations have been occurring since 2018, and he filed suit in 2020.  *See* Doc. 1; Doc. 11 at 2.  The Court therefore cannot conclude that Plaintiff will suffer irreparable harm if his request for injunctive relief is resolved on a full record, rather than on an emergency basis.

### III.  Remaining Factors

The remaining factors address the public interest and whether the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party.   As the Defendants are government actors, these factors overlap.  *See Nken v. Holder*, 556 U.S. 418, 435 (2009).  While a TRO may not offend the public interest, granting the requested relief without more information could impose a hardship on Defendants.  For example, ordering Defendants to offer a better variety of pre-packaged Kosher meals, ensure that Plaintiff receives 3,000 calories per day, and comply with the meal requirements for Shabbat/Sabbath could be overly vague.  *See* Doc. 10 at 4; Doc. 12 at 1.  And, because religious freedoms are evaluated "in reference to legitimate penological objectives," it would be difficult to enter an *ex parte*, mandatory TRO requiring a "no-touch" meal preparation system.  *Gallagher*, 587 F.3d at 1069.  The final two prongs of the injunction test do not strongly favor Plaintiff, as required to enter a TRO.

For the foregoing reasons, the Court will deny the TRO Motion, but require an answer and refer the case to the Magistrate Judge for a full merits investigation.  The Court will give Defendants an opportunity to waive service before ordering personal service by the U.S. Marshals.  The costs of service may be imposed on Defendants if the Court finds that they declined to waive personal service without good cause.  *See* Fed. R. Civ. P. 4(d)(2).  The Court finally clarifies that the denial of the TRO Motion is without prejudice to refiling a more detailed motion seeking an injunction once Defendants appear in the case.

**IT IS ORDERED** that the Clerk's Office shall **ISSUE** notice and waiver of service forms, with copies of the Amended Complaint (**Doc. 3**), for each Defendant.

**IT IS ORDERED** that the Motion for Temporary Restraining Order (**Doc. 10**) is **DENIED**

**without prejudice** to refiling.

_____
HONORABLE MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE