IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CARNELL HUNNICUTT, SR.,

    Plaintiff,

v.                                                                                                              No. CV 20-206 MV/CG

DANIEL PETERS, et al.,

    Defendants.

## ORDER ADOPTING CHIEF MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Chief Magistrate Judge Carmen E. Garza's *Proposed Findings and Recommended Disposition* (the "PFRD"), (Doc. 126), filed February 15, 2022; Plaintiff Carnell Hunnicutt, Sr.'s *Objections to Proposed Findings and Recommended Disposition [Doc. 126]* (the "Objections"), (Doc. 135), filed March 2, 2022; and the *Response to Plaintiff's Objections to Proposed Findings and Recommended Disposition* (the "Response"), (Doc. 136), filed on March 16, 2022, by Defendants New Mexico Corrections Department, Southern New Mexico Correctional Facility, William Edgman, K.D. Miller, German Franco, Joshua Sigala, Ronald Martinez, and Jodi Upshaw (collectively "NMDOC Defendants").

In the PFRD, the Chief Magistrate Judge recommended that the Court grant Defendant Summit Food Services' *Motion for Summary Judgment* (the "Motion for Summary Judgment"), (Doc. 49), enter summary judgment in favor of Summit Food Services ("Summit") and NMDOC Defendants, dismiss Mr. Hunnicutt's *Complaint* (the "Complaint"), (Doc. 3), with prejudice, and deny the remaining motions as moot. (Doc. 126 at 28-29). The parties were informed that objections to the PFRD were due within fourteen days of the date on which the PFRD was filed.

*Id.* at 29. Mr. Hunnicutt timely filed his objections to the PFRD on March 2, 2022.[1] (Doc. 135). NMDOC Defendants timely responded on March 16, 2022. (Doc. 136). Summit did not respond to Mr. Hunnicutt's objections, and the time for doing so has passed. *See* Rule 12 of the Rules Governing Section 2254 Proceedings in the United States District Courts; FED. R. CIV. P. 72(b)(2).

Following a *de novo* review of the Complaint, the motions, the parties' briefing, the PFRD, Mr. Hunnicutt's Objections, and NMDOC Defendants' Response, the Court will **OVERRULE** the Objections, **ADOPT** the PFRD, **GRANT** Summit's Motion for Summary Judgment, enter summary judgment in favor of Summit and NMDOC Defendants, **DISMISS WITH PREJUDICE** Mr. Hunnicutt's Complaint, and **DENY** the remaining motions as moot.

**I.     Background**

Mr. Hunnicutt is currently incarcerated at Guadalupe County Correctional Facility. (Doc. 135 at 1). From 2018 through 2022, Mr. Hunicutt was incarcerated at the Southern New Mexico Correctional Facility ("SNMCF"), which is where the incidents at issue in this case transpired. (Doc. 3 at 4); (Doc. 49 at 2). While housed at SNMCF, Mr. Hunnicutt received Kosher meals as part of his Judaic practice, which were provided by Summit pursuant to its contract with SNMCF. *Id*. The breakfast and lunch meals consisted of "cold and hot cereal, eggs, peanut butter, muffins, cinnamon raisin rolls, carrots, celery, cheese, tuna, and cookies." *Id*. at 3. The dinner meals consisted of "certified Kosher pre-packaged box dinner entrees prepared by 'My Own Meals[.]'" *Id*. at 6. This case arises from Mr. Hunnicutt's allegation that these meals were

---

[1] The PFRD was entered on February 15, 2022. Objections were due fourteen days thereafter, adding three days for mailing. *See* (Doc. 126); *see also* FED. R. CIV. P. 5(b)(2)(D), (F). Thus, objections were due by March 4, 2022.

constitutionally inadequate. *See* (Doc. 1 at 2-5); *see also* (Doc. 49 at 2); (Doc. 56 at 3); (Doc. 61 at 2).

Mr. Hunnicutt initially filed his Complaint on March 9, 2020, alleging a broad swath of problems with the content of the Kosher meals provided by Defendants, as well as the ways in which Defendants prepared and served the meals, in violation of the First Amendment, the Fourteenth Amendment, 42 U.S.C. § 1983, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq., and the New Mexico Religious Freedom Restoration Act ("NMRFRA"), NMSA § 28-22-3 (2013). *See* (Doc. 1); (Doc. 3); *see also* (Doc. 13 at 1). For these purported violations, Mr. Hunnicutt seeks injunctive relief, compensatory damages, and punitive damages. (Doc. 3 at 28-29).

In his Complaint, Mr. Hunnicutt alleges that the Kosher meals provide him fewer than 3,000 calories daily, which he contends is nutritionally inadequate. (Doc. 3 at 3); (Doc. 61 at 10). He alleges that the meals are often cold, monotonous, missing items, sometimes not even Kosher, and contain meat only three days a week, while the non-Kosher population receives meat in their diet many more times a week. (Doc. 3 at 5, 8, 24); (Doc. 49 at 22); (Doc. 77 at 3); (Doc. 101 at 2). Mr. Hunnicutt further alleges that the meals are prepared by untrained, non-Kosher cooks, that they are prepared in spaces that allow for cross-contamination, and that the meals are often prepared and served in a manner that violates the Sabbath. (Doc. 3 at 4-6, 23); (Doc. 49 at 27); (Doc. 56 at 4-6, 9-10, 19-21). As a remedy to some of these alleged problems, Mr. Hunnicutt has asked that Defendants institute a no-touch, pre-packaged diet system. (Doc. 56 at 9).

Additionally, Mr. Hunnicutt alleges that he has been excluded from non-Jewish holiday meals and sales of food items at the commissary. (Doc. 3 at 15-18, 25). Mr. Hunnicutt alleges

that, after he filed prison grievances regarding these problems, Defendants began "withholding seasonings, vegetables and spices" from the "Kosher/Halal diets as punishment," serving "plain white rice, plain macaroni, [and] plain beans straight out of the can." (Doc. 3 at 11). Mr. Hunnicutt alleges that, also in retaliation, he was threatened with a transfer to another facility, and that he was in fact transferred to another facility for several months in 2020. (Doc. 3 at 25); (Doc. 101 at 8).

On August 10, 2021, Summit filed the instant Motion for Summary Judgment, including a *Martinez* Report, (Doc. 49), and on October 27, 2021, NMDOC Defendants filed their own *Martinez* Report, (Doc. 77).[2] In these filings, Defendants ask the Court to grant summary judgment in their favor and to dismiss the Complaint. *Id*. Defendants contend that there exist no genuine issues of material fact as to any of Mr. Hunnicutt's claims, and that, accordingly, Mr. Hunnicutt has failed to establish any of his claims. (Doc. 49 at 24). Mr. Hunnicutt responded, arguing that there remain issues of material fact regarding the alleged deficiencies in his Kosher diet, which preclude summary judgment. (Doc. 56 at 12).

In the PFRD, the Chief Magistrate Judge considered Mr. Hunnicutt's allegations as well as the record, and found that there were no genuine issues of material fact regarding any of his claims. (Doc. 126 at 12-28). In particular, first, the Chief Magistrate Judge found no genuine issues of material fact as to whether Defendants had violated Mr. Hunnicutt's Fourteenth Amendment Equal Protection rights, because Mr. Hunnicutt had failed to allege any

---

[2] Several other motions remain pending before the Court, including Mr. Hunnicutt's *Motion for a Temporary Restraining Order and Preliminary Injunction*, (Doc. 21), *Motion for Joinder of Plaintiff's Complaint* filed by Prospective Plaintiff Bobby Beale, (Doc. 26), Prospective Plaintiff Erminio Acosta, (Doc. 31), Prospective Plaintiff Brett Woolf, (Doc. 38), and Prospective Plaintiff Aaron Morrisette, (Doc. 40); Defendant Warden Ronald Martinez's *Motion to Dismiss and Memorandum in Support*, (Doc. 84); Defendant K.D. Miller's *Motion to Dismiss and Memorandum in Support*, (Doc. 85); Defendant Astrid Castillo's *Motion to Dismiss*, (Doc. 87); Defendant Mary Williams' *Motion to Dismiss*, (Doc. 88); and Defendant Joshua Sigala's *Motion to Dismiss and Memorandum in Support*, (Doc. 106).

discriminatory intent on the part of Defendants. *Id.* at 15. The Chief Magistrate Judge further found no genuine issues of material fact as to whether Defendants had violated Mr. Hunnicutt's rights under the First Amendment, RLUIPA, or NMRFRA, because the calorie amount of 2,800 was sufficient, and the occasional deficiencies in the meals provided, the food preparation, and the food service either did not constitute serious food deprivation, did not substantially burden Mr. Hunnicutt's right to practice Judaism, or did not outweigh the government's compelling interest in avoiding prohibitively high expenses in accommodating certain of Mr. Hunnicutt's requests. *Id.* at 20-26.

The Chief Magistrate Judge finally found that Mr. Hunnicutt's allegations regarding breach of contract between Summit and SNMCF and retaliatory transfer were without merit. *Id.* at 26-27. The Chief Magitrate Judge also found that his § 1983 claims were not actionable as a cause of action separate from his substantive constitutional and statutory claims. *Id.* at 28. The Chief Magistrate Judge recommended that the Court enter summary judgment in Defendants' favor, dismiss Mr. Hunnicutt's Complaint with prejudice, and deny the remaining motions as moot. *Id.* at 28-29.

Mr. Hunnicutt has timely objected to the PFRD. (Doc. 135). Mr. Hunnicutt's first objection concerns his Fourteenth Amendment claim: he contends that the Chief Magistrate Judge erred in finding that he had failed to allege any discriminatory intent by Defendants. *Id.* at 2-3. Mr. Hunicutt's remaining objections concern his claims under the First Amendment, RLUIPA, and NMRFRA. *Id.* at 3-7. He contends, first, that although he was provided 2,800 to 3,000 calories daily according to the prison menu, he did not actually receive this amount "because he had to throw away food that was inedible, [there were] missing food items, or [it contained] food that was non-Kosher and could not be consumed." *Id.* at 4-5. Next, he contends

5

that the Chief Magistrate Judge erred in placing on him the burden to offer a less restrictive alternative to a no-touch diet system. *Id.* at 5-6. Finally, Mr. Hunnicutt argues that the Chief Magistrate Judge erred in determining that he could not, as a third party beneficiary to a contract, sue Summit for breach of its contract with SNMCF. *Id.* at 6-7.

**II.    Analysis**

District judges may refer dispositive motions to magistrate judges for proposed findings and a recommended disposition pursuant to 28 U.S.C. § 636 and Rule 72 of the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b)(1). "Within 14 days after being served with a copy of the [magistrate judge's] recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." 28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b)(1). To preserve an issue for review, a party's objections must be "both timely and specific." *United States v. One Parcel of Real Prop., With Bldgs., Appurtenances, Improvements, & Contents*, 73 F.3d 1057, 1060 (10th Cir. 1996).

When resolving objections to a magistrate judge's recommendation, the district judge must make a *de novo* determination regarding any part of the recommendation to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C). Filing objections that address the primary issues in the case "advances the interests that underlie the Magistrate's Act, including judicial efficiency." *One Parcel of Real Prop.*, 73 F.3d at 1059. Objections must be timely and specific to preserve an issue for *de novo* review by the district court or for appellate review. *Id.* at 1060. Additionally, issues "raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996); *see also United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001).

     A.    <u>*Fourteenth Amendment Equal Protection Claim*</u>

In his Objections, Mr. Hunnicutt first challenges the findings in the PFRD regarding his Equal Protection claim under the Fourteenth Amendment. (Doc. 135 at 2-3). He contends that the Chief Magistrate Judge erred in finding no discriminatory intent by Defendants. *Id*. Mr. Hunnicutt argues that his "Complaint [doc. 3 at 4] clearly states in paragraph 20 [that] '[o]nce Defendants Summit Food Services and Castillo took over, the menu went to a vegetarian cycle of peanut butter, beans, cheese and rice with meatless entries." *Id.* at 2. NMDOC Defendants contend that this allegation fails to evince any discriminatory intent, which would require Defendants to offer an explanation. (Doc. 136 at 2).

As the Chief Magistrate Judge explained in her PFRD, a prisoner cannot establish an Equal Protection claim on the basis of religion unless he demonstrates not only that he was treated differently from other similarly-situated prisoners because of his religion, but also that the differential treatment was driven by a *discriminatory purpose*. *See Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Cullen v. Hatch*, 6:06-cv-341 MV/WPL, 2007 WL 9733619, at *2 (D.N.M. Aug. 28, 2007), *report and recommendation adopted*, 2007 WL 9729068 (D.N.M. Dec. 5, 2007); *Roberts v. Champion*, 255 F.Supp. 2d 1272, 1290 (D. Okla. 2003) (citing *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979)).

As proof of Defendants' discriminatory intent, Mr. Hunnicutt asks the Court to consider the allegation that the Kosher meal options changed when Summit took over the food preparation and service. (Doc. 135 at 2). This allegation, however, is not enough to show that Defendants changed the menu *because* they wanted to discriminate against Kosher inmates. *Cf.*, *e.g.*, *Ashaheed v. Currington*, 7 F.4th 1236, 1244 (10th Cir. 2021) (finding threats by prison officials

7

plus refusal to grant Muslim inmate a religious exemption for shaving, along with differential treatment of non-Muslims, permits an inference of discriminatory intent). Mr. Hunnicutt's allegation here establishes only that the menu changed, allegedly for the worse, when Summit took over, and that the change affected Kosher inmates. The reason for the change, without more from Mr. Hunnicutt, remains unknown. As such, Mr. Hunnicutt has failed to establish an Equal Protection Claim. Therefore, the Court will overrule this objection.

> B. *First Amendment, RLUIPA, and NMRFRA Claims*
>
> > i. *Daily Caloric Intake*

Turning to his religious freedom claims, Mr. Hunnicutt next challenges the finding in the PFRD that the Kosher meals provided him with a sufficient amount of daily calories. (Doc. 135 at 4-5). In particular, Mr. Hunnicutt argues that, although the meals provided him with 2,800 to 3,000 calories daily, he received less "because he had to throw away food that was inedible, [there were] missing food items, or [the meals contained] food that was non-Kosher and could not be consumed." *Id*. NMDOC Defendants contend that the record shows that Mr. Hunnicutt was "provided with nutritionally adequate Kosher meals." (Doc. 136 at 3).

Courts routinely have found similar calorie amounts in a prison diet to be sufficient. *See, e.g.*, *Washington v. McAuliffe*, 7:16-cv-476, 2019 WL 1371859, at *5-6 (W.D. Va. March 26, 2019) (finding between 2,464 calories and 3,114 calories per day to be sufficient); *Murnahan v. Daily*, No. 89-3285-S, 1990 WL 203139, at *3 (D. Kan. Nov. 28, 1990) (finding no constitutional violation where prisoner received 2,500 calories per day). In keeping with this precedent, the Chief Magistrate Judge correctly found that a diet providing 2,800 to 3,000 calories a day is sufficient.

Even to the extent that Mr. Hunnicutt experienced occasional lapses in food service, periodically missed side dishes, and felt compelled to throw away certain food items, those allegations do not establish a violation of the First Amendment, RLUIPA, or NMRFRA. Rather, Mr. Hunnicutt must allege a "serious deprivation of the minimal civilized measure of life's necessities[.]" *Strope v. Cummings*, 381 F. App'x 878, 880 (10th Cir. 2010) (internal quotations omitted). Courts have found such deprivation where prisoners were receiving at or around 1,000 calories per day. *See, e.g.*, *Hutto v. Finney*, 437 U.S. 678 (1978) (finding a constitutional violation where prisoners were subjected to a long-term diet of fewer than 1,000 calories a day); *Welch v. Spaulding*, 627 F. App'x 479, 482 (6th Cir. 2015) (finding that an inmate receiving 1,300 calories per day may state a claim for relief); *Ridley v. Mahoning Cty. Sherriff*, 4:18-cv-1143, 2018 WL 4899075, at *3 (N.D. Ohio, Oct. 9, 2018) ("[P]roviding a totally daily caloric intake of less than 1,000 could be an objectively serious condition."). Therefore, the Court will overrule this objection.

    ii.  *Less Restrictive Alternative to No-Touch Diet System*

Mr. Hunnicutt further objects to the finding in the PFRD that, even if the preparation of some of Mr. Hunnicutt's meals by non-Jewish individuals prevented him from adhering to Bishul Yisrael, under which certain foods are prohibited if they are cooked exclusively by non-Jewish individuals, his claim would fail because Mr. Hunnicutt did not offer a less costly alternative to the no-touch diet system. (Doc. 135 at 5-6). Mr. Hunnicutt argues that Defendants never made an issue of the cost of a no-touch diet system. *Id.* at 6. He further agues that the Chief Magistrate Judge should not have placed on him the burden to offer a less restrictive alternative, because he cannot access a computer to "look [] up Kosher vendors and compare costs[.]" *Id*. NMDOC Defendants maintain that, despite Mr. Hunnicutt's difficulty accessing a

9

computer, the law places the burden on him to offer a less restrictive alternative to a no-touch diet system. (Doc. 136 at 4). NMDOC Defendants contend that they have nevertheless implemented a less restrictive alternative by "ensur[ing] Kosher meals are prepared separately and with separate cookware and utensils." *Id*.

The Supreme Court has stated that while "prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating a claimant's constitutional complaint[,] . . . if a claimant can point to an alternative that fully accommodates the prisoner's rights at *de minimis* cost to valid penological interests, a court may consider that as evidence" that the complained-of action is unconstitutional. *Turner*, 482 U.S. at 90-91. But Mr. Hunnicut has not done this here.

NMDOC Defendants allege they have implemented what they consider to be a less costly alternative to a total no-touch diet system, namely a system that partially incorporates a no-touch diet. *See* (Doc. 136 at 4); *see also* (Doc. 49 at 5, 27). As Summit explained in its *Martinez* Report, although the Kosher meals are not necessarily pre-packaged, which is what Mr. Hunnicutt considers to be no-touch, the Kosher meals are prepared by trained religious cooks, and they are prepared with "cookware and utensils that are stored separately and are washed, rinsed and sanitized separately." *Id.* at 5, 27. Mr. Hunnicutt certainly disputes the quality and consistency of this particular Kosher diet system, but he points to no alternative that would fall between this quasi no-touch diet system and the more restrictive totally pre-packaged, no-touch diet system.

The Court is left with only Defendants' alternative, and thus left to infer that Mr. Hunnicutt would be satisfied only with a totally pre-packaged, no-touch diet system. *See* (Doc. 56 at 9-10) (arguing that Defendants do not have a no-touch diet system because, if they did, the

meals would be pre-packaged for breakfast, lunch, and dinner, and not require any "cooking of side dishes, no wrapping of foods, [and] no preparing of trays."). Accordingly, Defendants' implementation of a quasi no-touch diet system, instead of Mr. Hunnicutt's request for only pre-packaged meals, is reasonably related to their legitimate penological interest in not incurring exorbitant costs and is the least restrictive means of meeting that interest. *See*, *e.g.*, *Wilson v. Gonzales*, 1:16-cv-604 MCA/CG, 2018 WL 2090686, at *5 (D.N.M. May 4, 2018), *report and recommendation adopted*, 2018 WL 2432897 (D.N.M. May 30, 2018) (finding denial of pre-packaged meals was "both reasonably related to legitimate penological goals and . . . the least restrictive means of meeting a compelling interest"); *Dean v. Corrs. Corp. of Am.*, 108 F. Supp. 3d 702, 716-17 (D. Ariz. 2014) (finding compelling interest and least restrictive means met where prepackaged meals cost over $8,000 annually). Therefore, the Court will overrule this objection.

    C.    <u>Breach of Contract Claim</u>

Finally, Mr. Hunnicutt objects to the Chief Magistrate Judge's finding that Mr. Hunnicutt could not sue Summit for breach of its contract with SNMCF. (Doc. 135 at 6-7). Mr. Hunnicutt contends that the law permits him, as a prisoner, to sue Summit, as a private contractor, for failing "to satisfy the terms of the contract between the [contractor] and the state." *Id.* at 6. NMDOC Defendants contend that, while they "take no position on this argument," Mr. Hunnicutt has demonstrated no basis "upon which he can assert a claim against these defendants over alleged breach of a contract he was not a party to." (Doc. 136 at 4-5).

"New Mexico follows the general rule that one who is not a party to a contract lacks standing to sue for its breach, absent a special status such as that of a third-party beneficiary, corporate successor, or assignee of a contracting party." *Veterinary Pharm., Inc. v. Pugliese*, 6:3-

cv-838 MV/LCS, 2005 WL 8163653, at *9 (D.N.M. Sept. 28, 2005) (citing *Resolution Trust Corp. v. Ocotillo West Joint Venture*, 840 F. Supp. 1463, 1477 (D.N.M. 1993). "There are two classes of th[ird] party beneficiaries: (1) intended beneficiaries and (2) incidental beneficiaries." *McCann v. Dorsey*, 1:1-cv-53 MCA/DJS, 2003 WL 27384880, at *11 (D.N.M. Sept. 30, 2003) (citing *Tarin's, Inc. v. Tinley*, 2000-NMCA-048, ¶ 13, 129 N.M. 185, 191). Only the first of these two classes, intended beneficiaries, may seek enforcement of a contract. *Id*. "The paramount indicator of third-party beneficiary status is a showing that the parties to the contract intended to benefit the third party, either individually or as a member of a class of beneficiaries." *Id*. "The burden is on the person claiming to be a third-party beneficiary to show that the parties to the contract intended to benefit him." *Id*.

      Here, the Court is not privy to any parts of the contract between Summit and NMDOC Defendants. Mr. Hunnicutt has alleged no facts pertaining to the contract; he simply offers the conclusory statement that he is a third-party beneficiary to the contract because he, in his capacity as a prisoner, was at the facility where Summit provided food pursuant to the subject contract. That is not enough to show that Mr. Hunnicutt is a third-party beneficiary to the contract, and thus, the Court cannot conclude on the record before it that Mr. Hunnicutt has any standing to sue Defendants for breach of contract. *See*, *e.g.*, *Jaramillo v. Bustamante*, 1:9-cv-634 JCH/WDS, 2011 WL 13217072, at *11 (finding no third-party-beneficiary breach of contract claim "[b]ecause neither party . . . submitted any portion of the contract at issue into the summary judgment record—or even cited to the contract in its brief"); see also *Klamath Water Users Protective Ass'n v. Patterson,* 204 F.3d 1206, 1211 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000) ("Parties that benefit from a government contract

are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary."). The Court will thus overrule this objection.

### III.    Conclusion

For the foregoing reasons, the Court finds that the Chief Magistrate Judge conducted the proper analysis and correctly concluded that summary judgment should be entered in Defendants' favor, Mr. Hunnicutt's Complaint should be dismissed with prejudice, and the remaining motions should be denied as moot. Therefore, Mr. Hunnicutt's Objections are overruled.

**IT IS THEREFORE ORDERED** that Defendant Summit Food Services' *Motion for Summary Judgment* (Doc. 49) and the relief requested in NMDOC Defendants' *Martinez* Report (Doc. 77) are **GRANTED**;

**IT IS FURTHER ORDERED** that Mr. Hunnicutt's Complaint (Doc. 3) is **DISMISSED WITH PREJUDICE**; and

**IT IS FINALLY ORDERED** that the motions that remain pending on the docket (Docs. 21, 26, 31, 38, 40, 84, 85, 87, 88, and 106) are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

_____
MARTHA VAZQUEZ
Senior United States District Judge